**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **MERCEDES SANDOVAL and** | Civil Action File No. |
| **JONATHAN EMERSON,** individually, and | |
| on behalf of others similarly situated, | |
| | |
| Plaintiffs, | |
| | |
| vs. | |
| | |
| **FANEUIL, INC.**, a Virginia Corporation, | |
| | |
| Defendant. | |

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND JURY DEMAND

Plaintiffs, MERCEDES SANDOVAL and JONATHAN EMERSON (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant FANEUIL, INC. ("Defendant"), and state as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Virginia Wage Payment Act ("VWPA"), Code of Virginia §40.1-29, and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. Faneuil, Inc. provides business process outsourcing services for companies across the United States. Its broad range of services include customer care, technical support, back-office

1

operations, staffing, and support for employee onboarding and case management.

3. According to its website, Defendant provides "seamless and scalable business process outsourcing solutions."[1]

4. Defendant claims it can "rapidly recruit, train, deploy and manage passionate and compassionate personnel supported by intelligent technology to take on any task." *Id*.

5. In providing these services, Defendant employs hourly customer service representatives and trainers of customer service representatives (together referred to herein as "CSRs"). As explained herein, Plaintiffs worked as both trainers and customer service representatives and experienced the same wage law violations while in both positions, as more fully explained herein.

6. Defendant's CSRs work for Defendant in both brick-and-mortar call centers and remotely. In the past three years, Defendant has employed Plaintiffs as CSRs.

7. Defendant employs CSRs on an hourly basis, but routinely fails to compensate them for all hours worked, including all overtime hours worked, as discussed herein. Furthermore, all CSRs are subject to the same wage violations, as discussed herein.

8. In workweeks that the CSRs worked forty or more hours, Defendant's failure to compensate the CSRs for all hours worked resulted in a violation of state and federal overtime laws. *See* 29 C.F.R. §778.315.

9. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL

---

[1] *See*, https://www.faneuil.com/ (last visited 11/14/24).

Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

10.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

11.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*

12.     Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

13.     Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

14.     Through its attendance, schedule adherence, and performance metrics, Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts, during their unpaid meal periods, and at the end of their scheduled shifts.

15.     This results in CSRs not being paid for all time worked, including overtime.

16.      In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

17.     The time CSRs spend booting up and logging into these programs and applications before, during, and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs

3

effectively without them.

18. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

19. Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping, schedule adherence, performance, and attendance policies.

20. Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law. The putative class and collective is defined below.

21. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work but did not.

22. Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

23. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

**JURISDICTION**

24. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

4

25. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

26. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

27. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

28. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

29. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

30. Defendant simultaneously operates in two or more states, and so operated at all times relevant hereto.

31. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

32. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

33. This Court has personal jurisdiction over Defendant because it conducts business within the state of Virginia, has its principal place of business and headquarters in Virginia, is registered with the Virginia Secretary of State and employs individuals within the state of Virginia.

34. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Virginia, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this District and Division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

35. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

36. Plaintiff MERCEDES SANDOVAL ("Plaintiff Sandoval") is a Kansas resident who worked for Defendant as a remote CSR in Kansas within the last three years.[2]

37. Plaintiff Sandoval was employed as a CSR for Defendant on its Humana project from October 2019 to July 2022; on the LA Care project from July 2022 to August 2022; and the Dominion project from August 2022 to September 2024.

---

[2] During the relevant time, given their lengthy employment and significant experience on the job, both Plaintiffs also performed work for Defendant as trainers. However, even when working as a trainer, the Plaintiffs experienced the same off-the-clock work described herein. Furthermore, during the times they trained other CSRs, Plaintiffs were required to perform the CSR job duties during high call volume.

38. Defendant paid Plaintiff Sandoval for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $18.50 per hour.

39. Plaintiff Sandoval signed a consent to join this collective action lawsuit. **Exhibit 1**, Sandoval Consent to Join.

40. Plaintiff JONATHAN EMERSON ("Plaintiff Emerson") is a Virginia resident who worked for Defendant as a remote CSR in Virginia within the last three years.

41. Specifically, Plaintiff Emerson worked as a CSR on the Dominion project from approximately July 2019 to October 2024.

42. Defendant paid Plaintiff Emerson for his services in the form of an hourly wage, for all credited hours worked, most recently at $18.00 per hour.

43. Plaintiff Emerson signed a consent to join this collective action lawsuit. **Exhibit 2**, Emerson Consent to Join.

44. Defendant is a Virginia Corporation (Entity ID No. F1803867), with its principal place of business located at 2 Eaton St., Ste 1002, Hampton, Virginia 23669-3979.

## GENERAL ALLEGATIONS

45. Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices within the last three (3) years.

46. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; (d) reading emails daily with work

instructions; and (e) logging out of the computer software programs and applications and the hard phones and shutting down their computers.

47. Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

48. These schedules result in CSRs routinely working unpaid overtime.

49. Throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

50. At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

51. Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

52. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

53. These programs, applications, and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

54. Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping, and attendance policies, and are subject to quality assurance reviews (performance metrics) based on the same or similar criteria.

55. Defendant instructs and trains CSRs to have all of their computer networks, software programs, and applications open and ready at the start of their scheduled shifts, and before they can log into Defendant's phone system to begin taking phone calls and before they clock in.

56. As a result, CSRs are forced to begin loading and logging into their computer systems before clocking in.

57. By virtue of its written policies, Defendant pressures CSRs to load and log-into their required computer systems *before* clocking into the timekeeping system.

58. In fact, under Defendant's timekeeping system, CSRs are assessed an attendance occurrence with they are even one (1) minute late for their scheduled shift.

59. Furthermore, Defendant routinely schedules CSRs for forty hours a week but maintains a policy that states "[a]ll overtime work must be authorized in advance by your supervisor." Consequently, when a CSR is scheduled for 40 hours and works their full shift, reporting any hours outside of their scheduled hours would result in overtime hours that were not authorized in advance.

60. To that end, Defendant's written policies expressly encourage CSRs to avoid attendance occurrences by "working all scheduled hours during your work week with no tardies, early departures or late returns from lunch or breaks."

61. Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

62. This performance metric necessarily requires that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

63. Defendant also enforces their policy of requiring all computer networks, programs and applications be open and ready before clocking in, through their other performance metrics

and schedule adherence policies.

64. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

65. Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

66. Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

67. In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

68. This time could easily be recorded, accounted for, and paid, but Defendant chose not to credit such time as time worked.

### A. Pre-Shift Off-the-Clock Work

69. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

70. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

71. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

72.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to complete the following tasks or tasks substantially similar: turn on the computer, load and log-into windows, connect to Defendant's virtual private network (VPN) using Duo Authentication, open Microsoft Authenticator to access office 365 applications, log-into Teams, log into citrix using an authentication application/token, then load and log into several essential web-based work programs for the Dominion Energy project, and finally, load and log into HR Central to clock in no more than five minutes before the start of the scheduled shift.

73.     As indicated above, the process of fully loading and logging into the computer systems resulted in approximately ten (10) to fifteen (15) minutes of off-the-clock work.

74.     In some instances, the process took even longer. In fact, the process of loading and logging into Citrix would often take ten minutes in and of itself.

75.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities. CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

76.     Defendant fails to compensate CSRs for the computer boot up tasks.

77.     Instead, as discussed above, Defendant maintains attendance, adherence, and performance policies that require them to be call-ready at the start of their scheduled shift.

78.     Further, Defendant deems prohibits CSRs from clocking in more than five minutes before the start of their scheduled shift, while at the same time, requires them to be call ready the moment their scheduled shift begins.

79.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than ten (10) minutes per day of work performed in connection with

the above pre-shift activities.

**B.    Meal-Period Off-the-Clock Work**

80.    Defendant provides their CSRs with one unpaid hour lunch break per shift.

81.    However, the CSRs do not receive the full lunch period because Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

82.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

83.    Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

84.    In fact, several of the programs utilized by CSRs automatically log them out if they are idle for more than a few minutes (at lunch), which requires them to undergo some or all the bootup process outlined herein.

85.    On most days, CSRs spend approximately one (1) to two (2) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

86. Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C. Post-Shift Off-the-Clock Work

87. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

88. The shutdown and logout process requires another three (3) to five (5) minutes of off the clock work per shift.

89. Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

90. As stated above, CSRs are subject to discipline for beginning the shutdown process even one minute.

91. Additionally, Defendant prohibited CSRs from working unapproved overtime hours, so Defendant did not permit CSRs to routinely stay clocked in after the end of a scheduled shift.

92. Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

93. The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**D.** **Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

94.     An example of specific workweeks where Defendant failed to pay Plaintiff Sandoval all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, is provided below:

**Pay Period of March 23, 2024, to April 5, 2024**

- Plaintiff Sandoval was paid at a rate of $18.50 per hour for the 80.67 regular hours and $27.75 per hour for 10.52 overtime hours Defendant credited her with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fourteen (14) to twenty-two (22) minutes per shift, at five shifts per week, Plaintiff Sandoval should have been paid an additional one hundred forty (140) to two hundred twenty (220) minutes at her overtime rate of $27.75 during the overtime workweek.

95.     Plaintiff Emerson similarly routinely worked over forty hours or more hours per week but was not paid for all overtime premiums earned.

96.     The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

**E.** **Defendant Benefitted from the Uncompensated Off-the-Clock Work**

97.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

98.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of their CSRs.

99.     At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period, and post-shift activities.

100. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

101. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

102. At all relevant times, Defendant used their attendance, adherence, performance, and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period, and post-shift off-the-clock work.

103. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

104. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period, and post-shift activities they performed.

105. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

106. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period, and post-shift activities was compensable under the law.

107. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

108. Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work, and instead suffered and permitted it to happen.

109. Much of the unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

**F. Defendant Paid Straight Time Wages for Overtime Hours Worked**

110. As evidenced by the pay statement above, Defendant paid CSRs straight time wages for hours worked over forty in a workweek.

111. For example, in the two-week period above, Plaintiff was paid for 80.67 hours of straight time. During that two week pay period, any hours Plaintiff worked over 80 should have been paid at her overtime rate rather than her straight time rate.

112. Other examples of this happening include the pay periods beginning on January 13, 2024; February 16, 2024; February 24, 2024; and July 13, 2024.

113. The FLSA requires all hours over 40 in a week to be paid at a rate of not less than one- and one-half times the employee's regular hourly rate. 29 U.S.C. § 207.

**G. Defendant Failed to Include Shift Differentials in the Regular Rate When It Calculated Overtime Pay**

114. In addition to the above-stated off-the-clock suffered/permitted by Defendant, Defendant illegally excluded non-discretionary bonuses and/or shift-differential pay from Plaintiffs' regular rate of pay and resulting overtime rates of pay, and thus, underpaid Plaintiffs and those similarly situated even for overtime hours it properly credited them as having worked.

115. Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108.

16

116. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109.

117. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

118. Defendant's compensation scheme, which included an hourly rate, plus incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

119. An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

120. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. *Id*.

121. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. *Id*.

122. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

123. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.

124. The burden is on Defendant to establish that any payment should be excluded.

125. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

126. Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

127. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).

128. The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

129. Because Defendant's compensation scheme failed to incorporate all the non-discretionary bonuses and/or shift differentials received in the regular rate of pay (and resulting overtime rates of pay), Defendant failed to properly compensate Plaintiffs and its other CSRs under

the FLSA.

130.     An example of a specific pay period where Defendant failed to pay Plaintiff Sandoval all overtime due because of failing to adjust her hourly rate to include incentive payments, as required by the FLSA, includes the following:

**Pay Period of December 2, 2023 to December 15, 2023**

- Plaintiff Sandoval was paid at a rate of $18.50 per hour for the 73.87 regular hours and $27.75 per hour for 3.25 overtime hours Defendant credited her with as having worked. (She used 3.5 hours of paid time off during this pay period.)

- She also received $2,250 in "ND Bonus" pay, which was not included in the calculation of her overtime rate.

131.     Plaintiff Emerson was likewise undercompensated for credited overtime hours worked during pay periods that she received non-discretionary bonus and/or shift differential payments.

## FLSA COLLECTIVE ACTION ALLEGATIONS

132.     For the off-the-clock work claims and regular rate claims, Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former hourly CSRs who worked for Defendant on the Dominion Energy program in the United States at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

133.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

134.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the

members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

135. Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

136. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.

137. This policy and pattern or practice includes, but is not limited to:

   a. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

   b. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant; and

   c. Willfully failing to include all remuneration paid in the calculation of the FLSA Collective's overtime premium rates.

138. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

139. Defendant's unlawful conduct has been widespread, repeated, and consistent.

140. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

141. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same

or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

142. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

143. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

144. Similarly, the claim for failing to include bonuses and other incentive pay in the calculation of regular rate and resulting overtime rate of pay does not vary substantially among the proposed FLSA Collective members.

145. Many similarly situated current and former CSRs in the FLSA Collective have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

146. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

147. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

148. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

149. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 CLASS ACTION ALLEGATIONS**

150. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

***All current and former hourly CSRs who worked for Defendant on the Dominion Energy program in the United States at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

151. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

152. There is a well-defined community of interest among members of the Rule 23 Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the pre-shift time that Rule 23 Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

    b. Whether the time that Rule 23 Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

    c. Whether the time that the Rule 23 Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

    d. Whether Defendant's failure to pay the Rule 23 Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly

enriched.

153. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Class' claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

154. Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

155. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

156. This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

157. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification

is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

158. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 VIRGINIA CLASS ACTION ALLEGATIONS

159. Plaintiff Emerson brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> ***All current and former hourly CSRs who worked for Defendant on the Dominion Energy program in Virginia at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "Rule 23 Virginia Class"). Plaintiff Emerson reserves the right to amend this definition as necessary.

160. The members of the Rule 23 Virginia Class are so numerous that joinder of all Rule 23 Virginia Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Virginia Class members. Rule 23 Virginia Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

161. There is a well-defined community of interest among members of the Rule 23 Virginia Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Virginia Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time that Rule 23 Virginia Class members

24

spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b. Whether the time that Rule 23 Virginia Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

c. Whether the time that the Rule 23 Virginia Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time;

d. Whether Defendant failed to make timely payments of all wages owed to the Rule 23 Virginia Class as required by Virginia law; and

e. Whether Defendant's failure to pay the Rule 23 Virginia Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

162. Plaintiffs' claims are typical of those of the Rule 23 Virginia Class in that they and all other members of the Rule 23 Virginia Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Virginia Classand their legal theories are based on the same legal theories as all other members of the Rule 23 Virginia Class.

163. Plaintiffs will fully and adequately protect the interests of the Rule 23 Virginia Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Virginia Class.

164. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Virginia Class to prosecute individual actions of their own given the relatively small

25

amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Virginia class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

165. This case will be manageable as a Rule 23 Virginia class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

166. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

167. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Virginia Class and declaratory relief is appropriate in this case with respect to the Rule 23 Virginia Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

168. Plaintiffs re-allege and incorporate all previous paragraphs herein.

169. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

170. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

171. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities

26

actually performed, are all non-exempt employees.

172. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

173. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

174. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fourteen (14) to twenty-two (22) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

175. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

176. Additionally, as set forth above, Defendant unlawfully failed to include all remuneration paid to the CSRs in the calculation of their overtime rates. *See above*.

177. Defendant's violations of the FLSA were knowing and willful.

178. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

179. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

180. Defendant knew or should have known how to properly calculate overtime premiums, given the clear directive from the FLSA and its governing regulations.

181. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**
**Breach of Contract**

182. Plaintiffs reallege and incorporate all previous paragraphs herein.

183. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

184. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other member of the Rule 23 Class to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

185. Defendant's contractual promises to pay Plaintiffs and each member of the Rule 23 Class's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the members of the Rule 23 Class.

186. Upon information and belief, each member of the Rule 23 Class, including Plaintiffs, is paid on an hourly rate.

187. Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them,

accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

188. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

189. On occasion, CSRs missed time from work causing them to work under 40 hours in a given week.

190. To the extent there is no other state law remedy available, Plaintiffs' and the members of the Rule 23 Class's remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

191. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**Unjust Enrichment**

192. Plaintiffs re-allege and incorporate all previous paragraphs herein, except those that allege a contractual agreement for the payment of wages existed.

193. This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

194. This Count applies only to workweeks were the FLSA's overtime protections are

inapplicable (less than 40 hours).

195.     At all times relevant to this action, Defendant promised Plaintiffs and every other member of the Rule 23 Class a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the members of the Rule 23 Class performed for the benefit of Defendant.

196.     Plaintiffs and every other member of the Rule 23 Class relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

197.     By not paying Plaintiffs and every other member of the Rule 23 Class the agreed upon hourly wage for the off-the-clock work they performed each shift Defendant was unjustly enriched.

198.     Plaintiffs and the members of the Rule 23 Class performed off-the-clock work tasks at the request of and without objection by Defendant.

199.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every member of the Rule 23 Class and enjoyed the benefits derived therefrom.

200.     Upon information and belief, Defendant used the monies owed to Plaintiffs and every other member of the Rule 23 Class to finance its various business ventures or pay its equity owners.

201.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the members of the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

202.     Plaintiff and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23

30

Classes were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

203.     As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other member of the Rule 23 Class suffered damages, including but not limited to, loss of wages.

**COUNT IV**
**(Rule 23 Virginia Class Action)**
**Violation of Virginia Wage Payment Act**

204.     Plaintiff incorporates by reference all allegations contained herein.

205.     Plaintiff Emerson and the Rule 23 Virginia Class were promised wages by Defendant at an agreed upon, fixed hourly rate for all hours worked.

206.     Defendant has failed and refused, without legal excuse or justification, to compensate Plaintiff properly, and as required by the VWPA.

207.     Code of Virginia 40.1-29(C) states "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with the law."

208.     Code of Virginia 40.1-29(G) and (J) provide for enhanced damages: "any employer who fails to make payment of wages … shall be liable for the payment of all wages due, and treble damages, plus interest at an annual rate of eight percent accruing from the date the wages were due." But "[i]f the court finds that the employer knowingly failed to pay wages to an employee … the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs."

209.     Defendant knowingly failed to pay wages pursuant to 40.1-29(G) and (J).

210. Plaintiff Emerson and the Rule 23 Virginia Class are owed wages for hours of labor as explained herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, the Rule 23 Virgnia Class, and the Rule 23 Class request judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c.   Certifying this action as a class action (for the Rule 23 Virginia Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claim (Count IV);

d.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the members of the Rule 23 Class, Rule 23 Virginia Class, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e.   Designating Plaintiffs as the representatives of the FLSA collective action, the Rule 23 Virginia Class, and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

f.   Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.   Declaring Defendant's violation of the FLSA was willful;

h.   Declaring Defendant breached its contracts with Plaintiffs and the Rule 23 class, as set forth in Count II;

i.   Declaring Defendant was unjustly enriched for failing to pay Plaintiffs all promised wages, as set forth in Count III;

j.   Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class, the Rule 23 Virgnia Class, and the Rule 23 Class the full amount of damages and liquidated damages available by law;

k.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.   Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

m.   Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: November 16, 2024       Respectfully Submitted,

**THE ERLICH LAW OFFICE**

_s/ Joshua Erlich_
Joshua Erlich, Esquire
(VA Bar No. 90394)
**THE ERLICH LAW OFFICE**
1550 Wilson Blvd #700
Arlington, Virginia
Phone: (703) 791-9087
jerlich@erlichlawoffice.com

**ASH LAW, PLLC**
Charles R. Ash, IV, Esquire (P73877)
(Pro Hac Vice _Forthcoming_)
43000 W. 9 Mile Rd., Ste. 301 PMB 2113
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez, Esquire (P73413)
(Pro Hac Vice *Forthcoming*)
126 S. Main St.
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
orod@hooperhathaway.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*